CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
10/23/2019
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| UNITED ENERGY WORKERS HEALTHCARE CORPORATION,  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>MELISSA GAIL ANDERSON, RN, CHPN  )<br><br>Serve: 100 Hitching Post Lane<br>Forest, Virginia 24551  )<br><br>Defendant.  ) | Civil Action Number: 6:19CV00073 |

### VERIFIED COMPLAINT

Plaintiff United Energy Workers Healthcare Corporation ("UEW Healthcare" or "UEW") files its verified Complaint against Defendant Melissa Gail Anderson ("Anderson") and asserts as follows:

### PRELIMINARY STATEMENT

1.      This is an action to enforce post-employment restrictive covenants, including non-compete, non-solicitation, and confidentiality obligations, and for violations of law arising from Anderson's breach of such covenants, and her other fragrant violations of law.

### PARTIES

2.      UEW Healthcare is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in the State of Wyoming. UEW Healthcare is thus a citizen of the States of Wyoming and Ohio.

3. Anderson is an adult individual who is a citizen of the Commonwealth of Virginia and who resides at 100 Hitching Post Lane in Forest, Virginia. She is a former employee of UEW Healthcare.

## JURISDICTION AND VENUE

4. This is a civil action for breach of contract, tortious interference, defamation and a violation of the Virginia Trade Secrets Act.

5. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 based on diversity of citizenship. The parties in this action are completely diverse and the amount in controversy exceeds $75,000, excluding interest and costs.

6. Defendant is subject to the personal jurisdiction of this Court because she has sufficient minimum contacts with the State of Virginia.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged occurred in this judicial district.

## BACKGROUND

**A.  UEW Healthcare's Home Health Care Business In General**

8. UEW Healthcare provides home health services to beneficiaries of the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA") and the Radiation Exposure Compensation Act ("RECA"). EEOICPA and RECA are administered by the United States Department of Labor ("DOL").

9. Potential EEOICPA and RECA beneficiaries must be qualified for eligibility by the DOL. Among other criteria, a home health care agency seeking to qualify the potential

patient must arrange for that patient to receive a medical screening exam from a licensed medical doctor and hire a nurse to prepare a plan of care report. The physician's exam results and plan of care report are then submitted by the home health care agency to the DOL. If the potential patient is deemed eligible for medical service benefits, the DOL issues an authorization letter and the home health care agency may thereafter begin providing a particular compliment of medical care services by contracting with licensed medical care providers (i.e., registered nurses, certified assistants, therapists, etc.) at privately agreed-upon rates.

10. Providing home health care to beneficiaries of EEOICPA and RECA is highly competitive. Home health care companies servicing eligible patients must expend substantial time and money upfront to locate and qualify patients. Thus, information known to a person or business in this field that provides an advantage in identifying, acquiring, or generating patients is very valuable.

11. Accordingly, UEW Healthcare has substantially invested in developing its systems and methods for developing patients, which include valuable proprietary confidential information and trade secrets, including, without limitation: market demographics research; backend parameters for social media and other online marketing platforms and methods not readily ascertainable by the public; web interface information for websites and platforms; proprietary empirical trial and error data/information developed through experimentation and fine tuning of patient generation systems; business, customer, medical care provider and vendor information and relationships; private information regarding patients and family members; patient lists; and other proprietary, confidential information and trade secrets. This information will be generally referred to herein as UEW's "trade secrets."

12. Once UEW identifies and begins work with a potential patient (sometimes also referred to as a client), UEW works closely with the prospective patient, often in conjunction with a family member such as a spouse, to ensure that all of the steps and approvals are in place. This process can take months. As part of the process, the patient enters into an Admission Service Agreement ("Service Agreement") with UEW.

13. UEW also contracts with persons to provide home health care services to these patients. These persons are generally referred to as caregivers, home health aides (HHAs) or contractors. UEW typically pays these contractors a fee for each unit of service (1 unit equals one hour of services).

14. Medically-necessary services to EEOICPA beneficiaries are reimbursed by the DOL in accordance with program rules and guidelines. Depending on a patient's medical condition and needs, these reimbursements can often amount to hundreds of thousands of dollars per qualified patient.

**B.     UEW Healthcare Hires Melissa Anderson as a Case Manager/RN**

15. UEW maintains an office at 101 Paulette Circle in Lynchburg, Virginia.

16. In late 2018, Anderson applied for employment with UEW Healthcare in Lynchburg. A copy of her resume that she provided to UEW is attached as Exhibit 1.

17. As shown in her resume, Anderson has years of experience as a licensed Registered Nurse in Virginia, as well as other nursing and health-care related certifications.

18. In early December 2018, UEW Healthcare hired Anderson as a Case Manager/RN for its Lynchburg market. A true and accurate copy of the offer letter, accepted by Anderson, is attached as Exhibit 2.

19. Anderson was also presented with a Confidentiality, Non-Disclosure, Non-Competition and Non-Solicitation Agreement ("Agreement") that she acknowledged and voluntarily accepted on December 5, 2018. A true and accurate copy of the Agreement is attached as Exhibit 3, and its terms are incorporated herein.

20. The Agreement included certain restrictive covenants binding on Anderson, each of which were narrowly tailored to protect UEW Healthcare's legitimate business interests.

21. The Agreement provides, for example, that Anderson would not use or disclose any of UEW Healthcare's trade secrets or confidential information, including, but not limited to, private information about UEW's patients and contractors, and information about UEW's financial models and practices. (Ex. 3, para. 2.)

22. Anderson also agreed that for 1 year after her employment ended, she would not perform work that was "Competitive" with the business of UEW Healthcare. (Ex. 3, para. 3(a)). "Competitive" is narrowly defined to mean a business "providing home health services to individuals who receive benefits under the Energy Employees Occupational Illness Compensation Program ("EEOICPA") and/or the Radiation Exposure Compensation Act ("RECA")." (Ex. 3, para. 3(d)).

23. Anderson also agreed that for 1 year after her employment ended, she would not "solicit, divert or appropriate or attempt to solicit, divert or appropriate, for the purposed of "Competing" . . . with the Company . . . any customers, clients, patients or vendors." (Ex. 3, para. 3(b)).

24. If any terms are violated, the Agreement provides UEW Healthcare with several remedies including injunctive relief; and recovery of attorneys' fees and costs in relation to enforcing the Agreement. (Ex. 3, para. 7(l)).

25. In her role, Anderson received patient assignments in the Lynchburg, Virginia region from UEW Healthcare and actively worked with patients, family members, and with persons contracted to provide services to the patients.

26. Anderson directly interfaced with patients, providing various services to them based on the patient's needs.

27. In addition, as a case manager, Anderson was privy to trade secrets and other confidential information about UEW's patients, contractors, caregivers, reimbursement rates, and methods for doing business.

28. While working for UEW Healthcare, Anderson was assigned to work with approximately 25 patients in the Lynchburg region.

29. In her role with UEW, Anderson had access to a highly confidential document referred to as a patient census. This document contains information about UEW's patients in the Lynchburg market and detailed information about their plans as well as their contact information.

30. On or about August 15, 2019, Anderson's employment was terminated for cause.

31. Anderson applied for unemployment with the Virginia Employment Commission (VEC). UEW Healthcare did not oppose her application, and the VEC awarded her unemployment compensation.

32. While Anderson returned certain items of tangible property to UEW, Anderson retained property belonging to UEW including trade secrets and other confidential contact

information about patients, contractors and caregivers. Upon information and belief, Anderson maintains a copy of a patient census that she did not return. In addition, Anderson printed a document just before she left that contained confidential information about the DOL approval process. She did not return this document to UEW. (See Ex.3, para.4.)

C. **Anderson Violates the Agreement and Defames UEW**

33. Unbeknownst to UEW Healthcare, on or about October 2, 2019, Anderson formed Nuclear Workers Alliance Home Care, LLC (NWA), listing her home address in Forest, Virginia, as the applicable address. This location is less than 7 miles from the UEW office.

34. Anderson and/or NWA are direct competitors of UEW Healthcare.

35. On or about October 7, UEW Healthcare learned that Anderson had mailed or otherwise delivered letters to known UEW patients and caregivers with whom she worked in Lynchburg. A true and accurate copy of one of these representative letters is attached as Exhibit 4.

36. The content of the letter confirms that Anderson still has access to UEW Healthcare's trade secrets and confidential information regarding its patients, has directly solicited UEW Healthcare's patients, and is directly competing against UEW Healthcare.

37. As explained further in Count 2 below, the letter also defames UEW Healthcare.

38. In addition, Anderson also distributed to these same persons (and others) her new NWA business card and brochure describing her services. A true and accurate copy of her business card and brochure is attached as Exhibit 5.

39. These materials confirm that Anderson is competing directly against UEW.

E. **UEW Healthcare Demands that Anderson Cease and Desist**

40. After learning of Anderson's direct solicitation of patients, UEW Healthcare sent a cease and desist letter to Anderson dated October 8, 2019. A true and correct copy of this letter is attached as Exhibit 6.

41. This letter reminded Anderson, among other things, of the restrictive covenants in the Agreement not to solicit patients of UEW Healthcare, not to divulge or disclose any confidential information, and not to compete against UEW Healthcare. She was urged to cease and desist from her violations and to stop competing immediately or she would face legal action.

42. Anderson responded to UEW Healthcare by admitting that she was competing against UEW in violation of her Agreement and would continue to do so citing her "need for employment." Anderson's October 8 email response is attached as Exhibit 7.

43. On or about October 15, UEW Healthcare learned that Anderson was continuing to solicit its patients in the Lynchburg area, and offering to pay caregivers and/or nurses more money. One such patient advised that she was considering ending her relationship with UEW Healthcare and working with Anderson and NWA.

44. Thus, unless she is immediately and permanently enjoined from violating her Agreement and Virginia law, Anderson will continue to solicit patients, and caregivers, to terminate their relationship with UEW Healthcare.

### COUNT 1 - BREACH OF CONTRACT

45. UEW Healthcare adopts and incorporates by reference each and every allegation contained in paragraphs 1 through 44 as if fully stated herein.

46. The Agreement between UEW Healthcare and Anderson (Ex. 3) is a binding and enforceable contract.

47. The restrictive covenants are necessary to protect UEW's legitimate business interests and are narrowly tailored to restrict direct competition in the Lynchburg market for one year.

48. Anderson materially breached the restrictive covenants of the Agreement by, among other things, directly competing against UEW, disclosing or divulging trade secrets and confidential information, soliciting UEW Healthcare patients to switch to her new business and otherwise interfering with UEW Healthcare's business and contractual relationships.

49. As a direct, proximate, and foreseeable consequence of this breach of contract, UEW Healthcare has been damaged and will suffer irreparable injury unless Anderson is enjoined.

**WHEREFORE**, UEW Healthcare demands judgment against Anderson for (a) damages as provided for in the Agreement; (b) temporary, preliminary, and permanent injunctive relief and/or other equitable relief; (c) interest as allowed by law; (d) costs of this action; and (e) attorneys' fees and expenses.

### COUNT 2 -- DEFAMATION

50. UEW Healthcare adopts and incorporates by reference each and every allegation contained in paragraphs 1 through 49, as if fully set forth herein.

51. In her letter to patients, Ms. Anderson told the recipients, "I am no longer with UEW. There were many concerns about the practice of the company that could have potentially put my license in jeopardy, not to mention the moral compromise" (the "Statement"). (Ex. 4.)

52. The Statement is false.

53. While Ms. Anderson did leave UEW (i.e., she was terminated for cause), none of UEW's practices could have or did put her nursing license in jeopardy.

54. None of UEW's practices could have or did put Ms. Anderson in a morally compromising position.

55. The Statement harms UEW's reputation by lowering it in the estimation of the community and deterring third parties from dealing with it.

56. The Statement throws shame and disgrace on UEW.

57. The Statement implies that UEW conducts its business in an improper and immoral manner.

58. Ms. Anderson intended to harm UEW with the statement, using it to solicit UEW's patients and contractors.

59. The Statement is defamatory as a matter of law.

60. As a health care provider in a program funded by the DOL, UEW is required to adhere to strict guidelines.

61. The Statement imputes a lack of integrity to UEW.

62. The Statement prejudices UEW in its profession and trade.

63. Ms. Anderson knew the Statement was false when she wrote her letter and sent it to UEW's patients and contractors.

64. Alternatively, if Ms. Anderson believed the Statement to be true, she lacked reasonable grounds to believe the Statement was true and acted negligently in failing to ascertain the facts.

**WHEREFORE**, UEW Healthcare demands judgment against NWA for (a) compensatory damages; (b) punitive damages; (c) interest as allowed by law; (d) any other relief recoverable under the law.

### Count 3
### Breach of Virginia Uniform Trade Secret Act

65. UEW repeats, alleges, and incorporates by reference paragraphs 1-64.

66. As alleged herein, Anderson has misappropriated confidential and proprietary information of UEW that constitutes trade secrets under the Virginia Uniform Trade Secrets Act, Va. Code §§ 59.1-336 *et seq*. These trade secrets include the confidential information provided to Anderson during her employment with UEW, such as information about UEW's patients, the patient census, and the operational and strategic financial information provided to her in the course and scope of her employment.

67. As noted in paragraph 11, UEW's trade secrets include, but are not limited to, its financial information, patient and contractor information, reimbursement rates, marketing strategies, vendor relationships, and processes and methods of doing business.

68. UEW's trade secrets have independent economic value, actual and potential, to UEW and are not generally known to or readily ascertainable by proper means by other persons who can obtain or derive economic value from the disclosure and/or use of such trade secrets.

69. UEW has undertaken reasonable efforts to protect its trade secrets, preserve their confidentiality, and preclude their unauthorized use and/or disclosure. For example, see paragraphs 1, 2 & 4 of the Agreement signed by Anderson. (Ex. 3.)

70. Anderson obtained knowledge of UEW's trade secrets in the course and scope of her employment relationship with UEW and, therefore, had a duty to maintain the secrecy of

11

such trade secrets. Additionally, the Agreement that she signed prohibits Anderson from misappropriating, disclosing, and/or using the confidential and proprietary information of UEW, which include its trade secrets.

71. Anderson misappropriated UEW's trade secrets because she took and used these trade secrets to engage in competition with UEW without UEW's express or implied consent, at a time when Anderson knew or had reason to know that she had acquired these trade secrets under circumstances giving rise to a duty to maintain the trade secrets' secrecy.

72. Anderson's misappropriation of UEW's trade secrets was willful and malicious.

73. As a result of Anderson's misappropriation of UEW's trade secrets, UEW has suffered, and will continued to suffer, substantial harm and damages.

Wherefore, for this Count, UEW seeks judgment against Anderson as follows: (i) monetary damages in an amount to be determined at trial; (ii) damages pursuant to Va. Code § 59.1-338(B); (iii) UEW's reasonable attorneys' fees, pursuant to Va. Code § 59.1-338.1; and (iv) a temporary and permanent injunction prohibiting the Anderson from misappropriating UEW's trade secrets.

### Count 4
### Tortious Interference with Contract or Economic Advantage

74. UEW Healthcare repeats, alleges, and incorporates by reference paragraphs 1 through 73.

75. UEW has valid and binding agreements with its patients, and valid agreements with its contractors.

76. UEW obtains economic benefits from its agreements with its patients and with its contractors.

12

77. As a result of the unlawful actions as generally alleged herein, patients of UEW have inquired about transferring some or all of their medical service needs to Anderson and/or NWA.

78. Anderson is well aware of the agreements in effect between UEW and its patients and caregivers, especially those patients with whom she worked during her employment with UEW.

79. Anderson engaged in her intentional interference with malice towards UEW and through improper means and methods. The improper means and methods employed include, but are not limited to: (a) Anderson's defamation of UEW; and (b) Anderson's misappropriation of UEW's trade secrets and confidential information.

80. Anderson has intentionally interfered and continues to interfere with UEW's patient relationships and expectancies, by engaging in direct and active competition with UEW.

81. UEW has a reasonable and objective expectation and certainty that absent the misconduct alleged herein, the agreements it has with its patients would continue for years, and UEW would receive substantial future economic benefits for providing its services to its patients.

82. Anderson's intentional interference has caused or may cause the termination of the agreements in effect between UEW and its patients.

83. Despite knowing about UEW's expectation of the economic advantage that would result from its ongoing agreements with its patients, Anderson has contacted and solicited these patients that she serviced while at UEW and used UEW confidential information, and defamed UEW, to seek to induce those patients to terminate their relationships with UEW and move their business to Anderson and/or NWA.

13

84. UEW has suffered, and will continue to suffer, substantial harm and damage as a result of Anderson's tortious interference.

**WHEREFORE**, UEW Healthcare demands judgment against Anderson as follows: (i) monetary damages in an amount to be determined at trial; (ii) punitive damages in the amount of at least $350,000; (iii) a temporary and permanent injunction prohibiting Anderson from tortiously interfering with UEW's agreements with its patients and contractors; and (iv) any other relief available under the law.

### JURY DEMAND

UEW Healthcare demands a trial by jury on all issues so triable.

United Energy Workers
Healthcare Corporation

By: s/ Todd A. Leeson
Counsel

Todd A. Leeson (VSB No. 30293)
Kelsey M. Martin (VSB No. 90897)
GENTRY LOCKE
P.O. Box 40013
Roanoke, Virginia 24022-0013
Tele: (540) 983-9300
Fax: (540) 983-9400
Email: Leeson@gentrylocke.com
Email: Martin@gentrylocke.com
Counsel for United Energy Workers Healthcare Corporation

## VERIFICATION

I, Terri Farmer, Manager for UEW Healthcare, verify and declare under penalty of perjury that I have read the Complaint, and that to the best of my knowledge and belief, any factual statements therein are true and correct.

Signed this 23rd day of October 2019.

_____
TERRI FARMER

15